UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY BLACKMON,

                        Plaintiff,

          – against –

FAMILY DOLLAR STORES OF NEW
YORK, INC., FAMILY DOLLAR, LLC,
JOHN AND JANE DOES 1–10,
*individually and in their official capacities*,
*and* XYZ CORP. 1–10,

                        Defendants.

**OPINION & ORDER**

23-cv-1971 (ER)

Ramos, D.J.:

      Henry Blackmon brought suit against Family Dollar Stores of New York, Inc. and Family Dollar, LLC (together, "Family Dollar") for employment discrimination on the basis of his disability, race, and religion. Doc. 1. Before the Court is Family Dollar's motion to compel arbitration of the underlying employment discrimination claims and dismiss the instant action. Doc. 13. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

### A. Factual Background

      Blackmon has Type 2 diabetes, diabetic neuropathy, a heart condition, anxiety, and a disabled back due to a separation between his spinal C3 and C4 levels. Doc. 1 ¶ 18.

      He applied for an assistant store manager position at Family Dollar store number 13004 on February 4, 2021, and applied for a customer service representative position at Family Dollar store number 6745 on February 21, 2021. Doc. 14 at 7–8. He accepted a position as customer service representative at store 6745 in either February or March of

2021.[1]  As a customer service representative, Blackmon worked from 8 a.m. to 2:30 p.m. (with an unpaid 30-minute lunch break) at $17.25 per hour.  Doc. 1 ¶¶ 19–20.  He disclosed his disabilities on his employment application and also informed the district manager (whom Blackmon refers to only as "Mr. Pomponio") at the start of his employment but did not request any accommodation at that time.  Id. ¶ 24.

Completion of both the applications and the onboarding paperwork required that Blackmon agree to the Mutual Agreement to Arbitrate Claims ("the MAA").  Doc. 14 at 7–8; see also Doc. 15-4 (MAA).  Moreover, Family Dollar notes that, Blackmon could only sign the MAA after following prompts to first preview the MAA in a separate browser window and then confirm that he had reviewed it.  Doc. 14 at 8–9.  The MAA provides that Blackmon and Family Dollar "agree to resolve by arbitration all claims or controversies arising out of or related to [Blackmon's] application for employment, offer or denial of employment, prospective employment, employment or its termination."  MAA ¶ 1.  Further, "[c]laims subject to arbitration include, but are not limited to, claims for . . . work conditions, including seating; . . . retaliation or discrimination (including, but not limited to, race, . . . religion, . . . physical or mental disability or handicap, or medical condition); . . . [and] all employment related laws including, but not limited to . . . the Americans with Disabilities Act."  Id. ¶ 2.

Blackmon alleges that, on March 2, 2021, he was promoted to assistant store manager, and was given a raise to $18.50 per hour.  Doc. 1 ¶ 21.  In his new role, Blackmon routinely performed physically demanding tasks that often required heavy lifting, stock work, and prolonged standing—none of which was outlined in his job

---

[1] Blackmon alleges he began working as a greeter at Family Dollar in February 2021 and was promoted to assistant store manager on March 2, 2021.  Doc. 1 ¶¶ 19–21.  Family Dollar alleges that he accepted his position as a customer service representative and completed his onboarding process on March 12, 2021.  Doc. 14 at 8.

description.² *Id.* ¶ 23. As a result, his diabetic neuropathy flared up in April 2021. *Id.* ¶ 25. Blackmon's doctor directed him to take time off from work and medically restricted him from standing for over four hours straight or from heavy lifting. *Id.* ¶ 26. Accordingly, on April 15, 2021, Blackmon requested that he be put in a position that does not require heavy lifting and where he would be able to sit as needed. *Id.* ¶¶ 27–28. Family Dollar denied his request and did not offer any other accommodation.³ *Id.* ¶ 29. On April 17, 2021, Blackmon emailed his general manager and Pomponio reiterating his request for an accommodation. *Id.* ¶ 30. He thereafter "repeatedly reached out to [] Pomponio to check on the status of his request." *Id.* ¶ 33. On April 27, 2021, Blackmon emailed Family Dollar again to request an accommodation. *Id.* ¶ 34. Pomponio responded that "everything takes time" but made no accommodations at that time. *Id.* ¶¶ 35–36.

Blackmon alleges that, because he received no accommodations, he sustained neurological damage and had to receive bilateral epidural shots. *Id.* ¶ 37. And in May 2021, Blackmon's doctor said that Blackmon could not return to work until a medical procedure⁴ was completed. *Id.* ¶ 38. Blackmon underwent the procedure on May 12, 2021 and was directed to rest during a two to three day recovery period. *Id.* ¶ 39. On May 13, 2023, Blackmon's general manager and Pomponio told Blackmon that he needed to return to work by May 19, 2021 (which was after the doctor-prescribed recovery period), stating: "We have to do what's best for the company, if you don't come back to work, you'll be fired." *Id.* ¶ 40. Blackmon returned to work on May 19, 2021. *Id.* ¶ 41.

On May 29, 2021, although it was Blackmon's day off, he noticed that the Family Dollar store where he worked was closed at a time when it was supposed to be open, and

---

² Blackmon does not specify if this refers to his job description as a customer service representative or as an assistant store manager.

³ It is not clear from the complaint whether Blackmon alleges that Family Dollar affirmatively denied the requests for accommodation or merely failed to respond to the requests altogether.

⁴ Blackmon does not specify what that procedure was.

3

Blackmon called Pomponio to inform him. *Id.* ¶ 42. Pomponio directed him to open the store. *Id.* Blackmon told Pomponio it was his day off, and he was not feeling well, as his blood pressure and sugar were up; but Pomponio insisted that Blackmon open the store and assured him another manager would be in shortly to take over. *Id.* ¶¶ 44–45. Blackmon opened the store, but no other manager came in that day to relieve Blackmon, only an employee who was there briefly but left early, complaining of stomach cramps. *Id.* ¶¶ 46–47. Because no one else was working at the store and no one could therefore cover the cash register, Blackmon was unable to take a break and, because of his medical conditions, defecated on himself while in the store. *Id.* ¶ 50. Blackmon repeatedly called Pomponio, but Pomponio did not answer any of the calls. *Id.* ¶ 51. Blackmon therefore closed the store so that he could go home and clean himself. *Id.* ¶ 52. Blackmon tried to contact Pomponio again once he was home, but Pomponio still did not respond. *Id.* ¶ 53.

The next day, on May 30, 2021, Blackmon texted Pomponio: "I have tried to reach you since yesterday after 1 p.m., to no avail. So my question is based upon the rumor in house, that I have been terminated as of today! Please confirm before 11 a.m. today, since I am scheduled for work at that time." *Id.* ¶ 54. Pomponio replied: "Henry I am unavailable, you have been removed from the schedule pending HR investigation." *Id.* ¶ 55. On June 1, 2021, Pomponio called Blackmon about keys that he had returned and also informed Blackmon that Family Dollar was investigating an incident from May 29, 2021 and reviewing camera footage from that day. *Id.* ¶¶ 58–59. During the call, Blackmon asked why the other employee, who was not disabled, left the store that day but was thereafter allowed to return to work, while Blackmon was not. *Id.* ¶ 60. Pomponio said Blackmon would have an answer by the next day, but Blackmon did not receive a response then. *Id.* ¶ 60–61.

On June 10, 2021, nearly two months after Blackmon's first request for an accommodation, Pomponio emailed Blackmon a reasonable accommodation form. *Id.* ¶ 62. Blackmon completed the form the next day, detailing his medical conditions and

attaching the relevant medical records. *Id.* ¶ 63. But Family Dollar denied the request and instead told Blackmon to apply for short-term disability. *Id.* ¶ 64.

On June 22, 2021, Pomponio called Blackmon and said that the store was short-staffed, and Blackmon needed to work a full shift without accommodations, beginning the next day. *Id.* ¶ 65. Pomponio also stated that Blackmon "could return to work pending a decision to his accommodation request,"[5] and noted: "HR may accommodate you, they may not—you may want to think about resigning." *Id.* ¶¶ 66–67. Blackmon returned to work.[6] *Id.* ¶ 68. On July 30, 2021, Family Dollar denied his accommodation request.[7] *Id.* ¶ 69.

In December 2021, Family Dollar hired a new store manager, who Blackmon identifies only as "Moduls" or "Mo." *Id.* ¶ 71. Mo is Muslim, and Blackmon alleges that, since Mo was hired, Mo has openly shown preferential treatment toward Muslim employees to the detriment of non-Muslim employees. *Id.* ¶¶ 71–72. For instance, Blackmon was made to work on his Sabbath days, but Muslim employees were allowed to take time off for prayer and Muslim holidays. *Id.* ¶¶ 73–74. Additionally, Mo prohibited Blackmon from writing up or reprimanding Muslim, but not non-Muslim, employees without getting approval from Mo. *Id.* ¶ 76. Mo also prohibited non-Muslim employees from eating pork during their lunch break. *Id.* ¶ 77. He also repeatedly told Blackmon that "Muslim Africans are 'superior' and 'better' than non-Muslim African Americans." *Id.* ¶ 78. Blackmon repeatedly complained to human resources and to Pomponio between January 2022 and April 2022, to no avail. *Id.* ¶¶ 78–81.

---

[5] It is not clear whether this occurred after Blackmon's June 11 accommodation request was denied (as Blackmon gave no date for the denial), or whether Blackmon submitted another request that was pending as of June 22, 2021.

[6] Blackmon does not give the date he returned.

[7] As above, it is not clear whether the denial was in reference to Blackmon's June 11 request or another request.

On March 21, 2022, Family Dollar demoted Blackmon to customer service representative, reduced his hours, and reduced his pay rate. *Id.* ¶ 70.

### B. Procedural Posture

Blackmon filed the instant action on March 8, 2023. Doc. 1. He brought claims for discrimination, retaliation, failure to provide reasonable accommodation, and hostile work environment on the basis of disability in violation of the Americans with Disabilities Act (42 U.S.C. § 12101), New York State Human Rights Law, and New York City Human Rights Law, as well as discrimination on the basis of religion under New York State Human Rights Law and New York City Human Rights Law. *Id.* ¶¶ 86–153.

On June 5, 2023, Family Dollar moved to compel arbitration and dismiss the instant action. Doc. 13.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("the FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). But parties are not required to arbitrate unless they have agreed to do so. *Id.* (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)). Thus, before an agreement to arbitrate can be enforced, the District Court must first determine whether such an agreement exists between the parties. *Id.* This question is determined by state contract law principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

The Court analyzes allegations regarding the formation of a valid arbitration agreement to determine if the allegations raise a genuine issue of material fact that must

be resolved by a fact-finder at trial. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." (citations omitted)). As with a motion for summary judgment, on a motion to compel arbitration, the Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. *See Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945) (noting that the parties seeking a stay in favor of arbitration "supported their application . . . by showing at least prima facie that" an agreement to arbitrate was proposed and accepted). This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed. *See Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010). Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to "show[] the agreement to be inapplicable or invalid." *Id.* (citation omitted); *see also Doctor's Assocs., Inc. v. Alemayehu,* 934 F.3d 245, 251 (2d Cir. 2019) ("An agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all.").

If the Court determines that a valid arbitration agreement exists, the Court must then determine whether the particular dispute falls within the scope of the agreement. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002). If the dispute falls within the scope of the arbitration agreement, the "role of the court ends and the matter is

one for arbitration." *Unique Woodworking, Inc. v. N.Y.C. Dist. Council of Carpenters' Pension Fund*, No. 07-cv-1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

### III.    DISCUSSION

Family Dollar alleges that, as a condition of his employment, Blackmon agreed to arbitrate claims related to his employment, including the instant claims, on three separate occasions. Doc. 14 at 6. Specifically, Blackmon applied for an assistant store manager position at store number 13004 on February 4, 2021, applied for a customer service representative position at store number 6745 on February 21, 2021, and accepted a position as customer service representative at store 6745 on March 12, 2021. *Id.* at 7–8. Each time, Blackmon was required to agree to the MAA. *Id*. Moreover, each time, Blackmon could only sign the MAA after following prompts to preview the MAA in a separate browser window and confirm that he had reviewed it. *Id* at 8–9. The MAA provides that Blackmon and Family Dollar "agree to resolve by arbitration all claims or controversies arising out of or related to [Blackmon's] application for employment, offer or denial of employment, prospective employment, employment or its termination. MAA ¶ 1. Further, "[c]laims subject to arbitration include, but are not limited to, claims for . . . work conditions, including seating; . . . retaliation or discrimination (including, but not limited to, race, . . . religion, . . . physical or mental disability or handicap, or medical condition); . . . [and] all employment related laws including, but not limited to . . . the Americans with Disabilities Act." *Id.* ¶ 2.

In opposition, Blackmon submits a declaration stating that, when he applied in-store for his current position at the Family Dollar in February 2021, he saw the MAA, but, "because that agreement was lengthy and I did not know or understand the scope or what exactly it pertained to, I notified the then store manager who was present during the application process that I cannot agree to something I do not understand." Doc. 17 ¶¶ 5, 9. The manager told Blackmon to continue with the application, and he would have the

8

papers emailed to him for further review at home (which did not then happen), but Blackmon did not then knowingly or voluntarily agree to the MAA. *Id.* ¶¶ 9–10, 12. Blackmon also disputes that applicants to Family Dollar must preview the MAA before they can sign it and submit their application. *Id.* ¶ 8.

Blackmon makes no mention of the application submitted to the other Family Dollar store, nor does he respond to Family Dollar's contention that he signed the MAA for a third time when he accepted his position on March 12, 2021. Accordingly, even if the Court were to disregard the February 21, 2021 signing as a nullity on the basis that Blackmon objected to the MAA, he has effectively conceded that he nonetheless entered into the MAA on at least two other occasions. *See Ramirez v. Temin & Co.*, No. 20-cv-6258 (ER), 2021 U.S. Dist. LEXIS 183760, at *28 n.2 (S.D.N.Y. Sep. 24, 2021) (holding that "a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument" and collecting cases). Moreover, even to the extent that Blackmon disputes that he ever read or understood the MAA, failure to read or understand a contract does not render it unenforceable. *See Martinez v. Bensusan*, No. 18-cv-10657 (VEC), 2019 U.S. Dist. LEXIS 188580, at *6–7 (S.D.N.Y. Oct. 30, 2019) ("[The plaintiff's] argument that he did not understand the arbitration policy also fails. Under New York Law, a party will 'not be excused from his failure to read and understand the contents' of a document. A party is 'under an obligation to read a document before he [] signs it, and [] cannot generally avoid the effect of a [document] on the ground that he [] did not read it or know its contents.'" (internal citations omitted)); *Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) ("Failure to read or understand a contract does not relieve a signer of its obligations thereunder.").

Because an arbitration agreement therefore exists, the only question before the Court is whether the instant dispute falls within its scope. *Specht*, 306 F.3d at 26; *Unique Woodworking, Inc*, 2007 WL 4267632, at *4. Blackmon does not dispute that the MAA

9

that Family Dollar submitted to the Court is a true and correct copy of the arbitration agreement included in his application and onboarding materials. The MAA explicitly provides that claims for retaliation or discrimination based on race, religion, disability, or medical condition, including those brought under the ADA, are subject to arbitration. MAA ¶¶ 1–2. Accordingly, all of the claims in the instant complaint are covered by the MAA and subject to arbitration. *See* Doc. 1 ¶¶ 86–153.

### IV.   CONCLUSION

For the reasons set forth above, Family Dollar's motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 13, and stay the case. The parties are directed to file a status update with the Court within 48 hours of the completion of arbitration.

It is SO ORDERED.

Dated:   December 28, 2023
         New York, New York

                                             _____
                                                  EDGARDO RAMOS, U.S.D.J.